# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DE LEON,<br><br>　　　　　　　　Plaintiff,<br>　vs.<br>CONEXANT SYSTEMS, et al.,<br><br>　　　　　　　　Defendants. | CASE NO. 15cv339-LAB (BLM)<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Plaintiff Joseph De Leon brought this action alleging claims under the Americans with Disabilities Act (ADA), derivative claims under California's Unruh Civil Rights Act and Disabled Person Act, and state-law tort claims. De Leon sued a number of different Defendants, and has voluntarily dismissed his claims against some of them.

**Factual Background**

The following facts are taken from the Complaint's allegations, which the Court assumes at this stage of the litigation to be true. De Leon is partially disabled and must use a can or other assistive device when walking. He was employed with a temporary work agency and was sent to an office building to work. On February 18, 2015 at around 7:00 a.m., he rode in an elevator to the second floor, where his job assignment. Unbeknownst to him, the elevator was not properly calibrated and had not been working properly for some unspecified period of time. It stopped three to six inches above the sill. When De Leon exited the elevator he fell forward and fractured his elbow.

The Complaint does not allege for how long the elevator was malfunctioning, and does not identify a reason for the malfunction. The Complaint also mentions two large mirrors being in an unsafe and/or dangerous condition, but never explains what it means by this. (Compl., ¶ 50.)

**Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

Defendant G4S moved to dismiss (Docket no. 4), arguing it was not responsible for any injury to De Leon. G4S points to allegations in the complaint that G4S is merely the security company under contract to protect the building (*id.*, 1:16–18), and that a G4S employee in the building informed her supervisor of the elevator's improper calibration. (*Id.*, 18–20.) G4S argues the remainder of the complaint's allegations against it consist of legal conclusions, and that De Leon has not alleged it is the owner, operator, or lessee of the building, or that it was responsible for the elevator's condition. This motion seeks dismissal of all claims. Defendant Maryland Lasalle Investment Management joined in this motion.

Defendant Conexant Systems moved to dismiss (Docket no. 13), arguing De Leon had not alleged discrimination under the ADA. Conexant also argued that because the Unruh and Disabled Person Act claims are completely derivative of the ADA claim, they must be dismissed as well.

**Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Fed. R. Civ. P. 8(a)(2), a complaint must give "a short and plain statement of the claim showing that the pleader is entitled to relief," and this statement must give fair notice of what the claim is and the grounds on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555. The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

/ / /

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

**Discussion**

**Conexant's and Maryland Lasalle's Motion**

The motion seeks dismissal only of De Leon's ADA, Unruh, and Disabled Person Act claims, not the state tort claims. It points out that the Complaint alleges only that the elevator temporarily malfunctioned on one occasion, and does not allege either that Defendants left it unrepaired for a long time or that there was a pattern or practice of failing to repair it. It also cites ADA regulations providing that isolated or temporary interruptions in access do not amount to ADA violations. *See* ADAAG Technical Assistance Manual*,* § III-3.7000.

De Leon counters by pointing to the Manual's wording, claiming that it only says that isolated or temporary interruptions in access due to maintenance and repair of accessible features are not prohibited. He construes this to mean that isolated or temporary interruptions for other reasons (*i.e.*, malfunctions) are therefore prohibited and do amount to ADA violations. (Opp'n, 6:20–26.) But language in that same section of the Manual contradicts his argument, explaining that isolated mechanical failures are not ADA violations, provided they are promptly repaired.

> Although it is recognized that mechanical failures in equipment such as elevators or automatic doors will occur from time to time, the obligation to ensure that facilities are readily accessible to and usable by individuals with disabilities would be violated, if repairs are not made promptly or if improper or inadequate maintenance causes repeated and persistent failures.

§ III-3.7000

/ / /

The Ninth Circuit reads parallel provisions as Defendants do. In *Midgett v. Tri-County Metropolitan Transp. Dist. of Oregon*, 254 F.3d 846, 849–850 (9th Cir. 2001), the panel confronted the problem of occasionally malfunctioning wheelchair lifts on public buses. The panel read 49 C.F.R. § 37.161(c)'s provision, "[t]his section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs" as meaning that "isolated or temporary problems caused by lift malfunctions are not violations of the ADA." 254 F.3d at 850. This is consistent with the Ninth Circuit's holding in other contexts that temporary and transitory denials of access do not amount to ADA violations. *See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc.*, 779 F.3d 1001, 1008–09 (9th Cir. 2015). Allowing the malfunction to persist beyond a "reasonable period of time" or repeatedly allowing it to happen would amount to a violation, however. *See id.* at 1008; *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 885 (N.D.Cal., 2015) (citing Department of Justice commentary); ADAAG Manual, § III-3.700 (providing that a violation occurs "if repairs are not made promptly or inadequate maintenance causes repeated and persistent failures").

De Leon says he only knows that the elevator had been malfunctioning for "some time" before his injury (Opp'n, 6:26–28.) He does not know for how long, and all he is able to say is that it was long enough for someone to report it by email. (*Id.*, 6:16–19, 10:26–28, 18:12–13, 17–19.) In other words, as far as he knows it might have been malfunctioning for only a short time. He points out that a worker in the building mentioned to him that the elevator had malfunctioned "in the same manner on several occasions," (*id.*, 9:26–28), but it is never explained when those occasions were, how far apart they were, how long they lasted, whether any repairs were made afterwards, and whether the repairs were successful.

De Leon points to some maintenance records for the elevator (Opp'n, 12:20–26), but it is unclear what they show. One record shows that, four days before the incident an oil leak of unknown origin was discovered in the "machine room" and was not repaired until months later. (*Id.*, 12:20–24.). But De Leon does not identify what was leaking, or allege facts suggesting the leak had anything to do with the malfunction, or even with the elevator. He also points to inspection records from three years earlier, which showed the elevator was

found deficient because of problems relating to the hoistway ropes and the interior of the cab. (*Id*., 12:24–26.) But again, there is no factual basis for connecting these problems with the malfunction that caused De Leon's injury. Merely pointing out various mechanical problems on the premises falls far short of pleading facts showing that maintenance on the elevator was so neglected as to cause repeated and persistent failures, or that the elevator had been left in its malfunctioning state for an unreasonable period of time. Furthermore, none of these additional facts are pled in the complaint.

De Leon argues that dismissal is premature because he needs to conduct discovery in order to plead his claims, but he never says what evidence or information he needs or expects to find. (*See* Opp'n, 6:28–7:1, 10:1–3.) Moreover, the Supreme Court's holdings in *Twombly* and *Iqbal*, and their progeny, make clear that fact discovery is available only to plaintiffs who have adequately pled their claims. *See Mujica v. AirScan Inc*., 771 F.3d 580, 593 (9th Cir. 2014) (citing *Iqbal* at 678–79) ("The Supreme Court has stated, however, that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it.") Furthermore, even without formal discovery, De Leon managed to obtain maintenance records for the building.

**G4S's Motion**

The Court has reviewed the Complaint, and agrees that it alleges nothing that would show why G4S was the owner, operator, or lessee of the building at issue in this case, nor any facts showing it maintained control over the premises. De Leon's Opposition (Docket no. 18) barely mentions G4 and makes but little effort to show why G4S should be held responsible for the condition of the elevator. Iit cites general definitions of "operate" in case law in an effort to explain why a security company should be considered to have been operating or in control of the building. (*Id*., 13:14–25.) None of this is reasonably inferrable from the Complaint, however. Other than the unremarkable fact that a security employee reported the malfunction, the Complaint alleges no facts that could reasonably suggest the security company was operating the building for purposes of the ADA. The Opposition admits that G4S's role was limited to notifying the building's owner or operator. (*Id*., 18:1–3.)

And, in the absence of any more factual allegations than are present here, the idea that a hired security company was running the building is not a reasonable inference.

De Leon's Opposition proffers more factual allegations, but even these would not salvage his claim against G4S.

**Jurisdiction**

The Court must confirm its own jurisdiction before proceeding to the merits, and must do so *sua sponte* if necessary. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–94 (1998). Even though Conexant, Maryland Lasalle, and the other Defendants have not raised the issue of supplemental jurisdiction over the state tort claims, the Court must do so.

De Leon has pled one federal cause of action, under the ADA. The remaining claims are brought under supplemental jurisdiction. The Complaint does not plead or rely on diversity or any other source of jurisdiction.

Under the ADA, injunctive relief is the sole relief available to a private party; money damages are not authorized. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). If injunctive relief is inappropriate or unavailable, the ADA claim would be moot. *See Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008). If that were so, the Court will not exercise jurisdiction over De Leon's supplemental state law claims. *See Wander*, 304 F.3d at 860; *Herman Family Revocable Trust v. Teddy Bear,* 254 F.3d 802, 805–806 (9th Cir. 2001).

The Complaint alleges only that De Leon visited the building in question once, on a temporary work assignment. It does not allege facts suggesting that he returns often, or is likely to return, or that the malfunctioning elevator (or any other barrier) is deterring him from returning. *See Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 951 (9th Cir.2011) (en banc) (holding that injunctive relief is available to remedy barriers that a handicapped plaintiff is "likely to encounter on future visits"). De Leon has not established that he has standing to seek injunctive relief. In the absence of jurisdictional standing, his entire complaint is subject to dismissal.

/ / /

/ / /

**Conclusion and Order**

The two motions to dismiss are **GRANTED**. De Leon's ADA, Unruh, and Disabled Person Act claims against Conexant and Maryland Lasalle are **DISMISSED WITHOUT PREJUDICE**. All his claims against G4S are **DISMISSED WITHOUT PREJUDICE**. The entire complaint is **DISMISSED WITHOUT PREJUDICE** for failure to invoke the Court's jurisdiction.

If De Leon thinks he can remedy these defects, he must seek leave by *ex parte* motion to file an amended complaint. He must file his motion no later than **March 21, 2016**, and must attach his proposed amended complaint as an exhibit. In particular, he **must** show that the Court has jurisdiction over his claims. **If De Leon fails to file a motion within the time permitted, or if the proposed amended complaint does not adequately plead jurisdiction, this action will be dismissed without leave to amend.**

If he files such a motion, Defendants may file a joint opposition by **April 4, 2016.** The Court will set a hearing if appropriate, but otherwise the matter will be submitted on the papers.

**IT IS SO ORDERED**.

DATED: February 29, 2016

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge